33188. SINYARD *v.* STOKES and ROYAL INDEMNITY CO.

DECIDED OCTOBER 6, 1950.

*Dobbs & McCutchen,* for plaintiff.
*Neely, Marshall & Greene,* for defendants.

SUTTON, C. J. The claimant, L. B. Sinyard, received accidental injuries to his back, left kidney, and right ankle, when he fell from a ladder while working as a painter for H. V. Stokes, on April 16, 1948, and on account of said injuries he

was paid compensation of $20 per week for 23 weeks. The interested parties then entered into the following agreement, which was approved by and made the award of the State Board of Workmen's Compensation, on October 14, 1948: "1. That on April 16, 1948, Leonard Bartow Sinyard, while employed by H. B. Stokes, sustained injuries as the result of an accident which arose out of and in the course of his employment, when he fell from a ladder bruising and straining his back, injuring his left kidney and spraining his right ankle; and under agreement filed with and approved by the Board claimant has been paid compensation at the rate of $20 a week for and during a period of twenty-three weeks. 2. Claimant has been seen and treated for his injuries by Dr. Frank Boland and Dr. Joseph H. Boland, and he has been examined by Dr. F. C. Mims as the Board's disinterested physician; and while these doctors are not in accord in their opinions as to the cause of claimant's condition, they are agreed that claimant is now totally disabled, and they further agree that such total disability will in all probability continue for a long period of time. 3. In this situation the parties agree as follows: that claimant is now totally disabled; that he has a 33-1/3% loss of use of his right foot and 10% of this disability is due to his accident of April 16, 1948; and that 25% of his remaining total disability is due to claimant's accident and injury of April 16, 1948, and that the remainder of his total disability (75%) is due to causes and conditions not related to such accident and injury. 4. That for his 10% loss of use of his right foot claimant is entitled to receive 12½ weeks' compensation at the rate of $20 a week, the commuted value of which is $248.13, and for his 25% body disability claimant is entitled to recover 264½ weeks' compensation at the rate of $8.75 a week, and the commuted value of such weekly payments is $2039.19. 5. That defendants agree to pay and claimant agrees to accept $2287.32 in a lump sum in full and final settlement of his claim against defendant for his accident and injuries of April 16, 1948." The claimant was paid the lump sum award pursuant to the terms of said agreement and award of the board.

On July 28, 1949, the claimant applied to the Workmen's Compensation Board for additional compensation based on a

change in condition, a hearing was had, and the deputy director rendered his finding and award, on January 23, 1950, that the claimant was entitled to additional compensation. This award was affirmed by the full board, with one of the directors dissenting; but, on appeal to the superior court, the award was vacated and set aside. The claimant excepted to that judgment.

■ Where the claimant, his employer, and the insurance carrier entered into an agreement, on October 14, 1948, that the claimant was totally disabled at that time, and agreed on an amount in a lump sum in full and final settlement of the employee's claim against his employer and insurance carrier for injuries sustained in the accident of April 16, 1948, which agreement was approved by and made the award of the Workmen's Compensation Board on that date, the claimant is not entitled to additional compensation on the ground of a change in condition, where there is no competent evidence authorizing a finding that his condition has changed for the worse since the original agreement and award. *Phinese* v. *Ocean Accident & Guaranty Corp.*, 81 *Ga. App.* 394 (58 S. E. 2d, 921).

Three witnesses testified at the hearing on the alleged change in condition, Dr. Martin T. Myers, the claimant, and Dr. Joseph H. Boland. Dr. Myers testified to the effect that he first saw the claimant on August 31, 1949, which was some ten months after the agreement and award of October 14, 1948, and that he last saw him on October 27, 1949. He testified that, in his opinion, the claimant was totally disabled to do his original type of work, that of a painter, during the time he treated him. He, of course, did not know of the claimant's condition in October, 1948. The claimant testified to the effect that he received the accidental injury in question in April, 1948, and he had not been able to do any work since the date of the accident; that his back had never been easy since the day he was hurt, and it gradually got worse; that he was in worse condition now (on October 28, 1949) than he was three months ago, and was not able to do anything; but he admitted on cross-examination that he might be able to work some if he had a job sitting down, though he had not been able to get such a job.

Dr. Joseph H. Boland testified to the effect: that his brother, Dr. F. K. Boland, had been treating the claimant for some time,

and he asked the witness to examine the claimant; that he first examined the claimant on September 1, 1948, at which time the claimant complained of pain and swelling of his right ankle and heel and pain in his back, from his upper shoulder region to the lower part of his back; that from the history obtained claimant fell from a ladder in April, 1948, and received injuries to his back and right ankle; that the claimant had a rather severe neurosis, which was more or less a type of fear and hypersensitivity with respect to his disability; that he again examined the claimant on September 9, 1949, at which time his complaints were essentially those of September 1, 1948, although he stated he was getting along fairly well, and he further stated that he had not returned to work since the injury of April, 1948; that the examination of September, 1949, was essentially the same as in 1948; and that the witness found no change in the claimant's condition in 1949, as compared with his examination in 1948, except that the claimant seemed more neurotic; that, upon examination in September, 1948, the claimant had a 75% limitation involving limitation of motions in the lumbar spine, and he apparently still had that percentage of limitation; and that there was no difference in the x-rays made in 1948 and those made in 1949.

The evidence was insufficient to show that there had been a change in the claimant's condition for the worse since the agreement and award of the board on October 14, 1948. In point of fact, the deputy director did not find that there had been a change in condition for the worse since October 14, 1948, the date of the agreement and former award, although he awarded additional compensation. His finding of fact in this respect was: "I further find as a result of said accident and injury and from personal observation that L. B. Sinyard, claimant, is and has been totally disabled since that date."

■ Under the evidence and the law applicable thereto, the finding of the deputy director, to the effect that the claimant was entitled to additional compensation, which was approved by the full board, one director dissenting, was unauthorized, and the judge of the superior court did not err in reversing and setting aside the award for additional compensation. The principles of law ruled in *Phinese* v. *Ocean Accident & Guaranty*

*Corp.*, supra; *Moore* v. *American Mutual Liability Ins. Co.*, 67 *Ga. App.* 259 (19 S. E. 2d, 763); *Hartford Accident & Indemnity Co.* v. *Carroll*, 75 *Ga. App.* 437 (43 S. E. 2d, 722), are applicable and controlling in this case.

*Judgment affirmed. Felton and Worrill, JJ., concur.*